Mark Labaton (Bar No. 159555)
mlabaton@motleyrice.com
**MOTLEY RICE LLP**
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (310) 500-3488
Facsimile: (310) 824-2870

| | |
|---|---|
| William H. Narwold | Christopher J. Keller |
| bnarwold@motleyrice.com | ckeller@labaton.com |
| **MOTLEY RICE LLC** | **LABATON SUCHAROW LLP** |
| 28 Bridgeside Blvd. | 140 Broadway |
| Mt. Pleasant, South Carolina 29464 | New York, New York 10005 |
| Telephone: (843) 216-9000 | Telephone: (212) 907-0700 |
| Facsimile: (843) 216-9440 | Facsimile: (212) 818-0477 |

*Attorneys for KBC Asset Management NV and Electrical Workers Pension Fund, Local 103, I.B.E.W., and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JIMMY ELIAS KARAM, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>     vs.<br><br>CORINTHIAN COLLEGES, INC., et al.,<br><br>            Defendants. | Case No. 2:10-cv-6523-GHK-RC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF KBC ASSET MANAGEMENT NV AND ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Hearing Date: November 29, 2010<br>Time: 9:30 a.m.<br>Judge: Hon. George H. King<br>Courtroom: 650 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES.................................................................................... ii

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS........................................................................................3

ARGUMENT .............................................................................................................5

I.  KBC AND LOCAL 103 SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS...................................5

    A.  The Procedure Mandated by the PSLRA for Appointment of Lead Plaintiff............................................5

    B.  KBC and Local 103 Are the "Most Adequate Plaintiff" ......................6

        1.  KBC and Local 103 Have Made a Timely Motion for Appointment as Lead Plaintiff .................................6

        2.  KBC and Local 103 Have the Largest Financial Interest in the Relief Sought by the Class ..................7

        3.  KBC and Local 103 Otherwise Satisfy the Requirements of Rule 23 ............................................7

            (a)  KBC and Local 103 Fulfill the Typicality Requirement.................................................9

            (b)  KBC and Local 103 Fulfill the Adequacy Requirement ................................................9

        4.  KBC and Local 103 Are Precisely the Type of Lead  Plaintiff Congress Envisioned When It Passed the PSLRA ..................10

II. THE COURT SHOULD APPROVE KBC AND LOCAL 103'S CHOICE OF COUNSEL ...........................................12

CONCLUSION ........................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Advanced Tissue Scis. Sec. Litig.*,
    184 F.R.D. 346 (S.D. Cal. 1998) .................................................................... 9

*Arensen v. Broadcom Corp.*,
    No. SA CV 02-301GLT,
    2004 WL 3253646 (C.D. Cal. Dec. 6, 2004) ...................................................... 7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .................................................................. 1, 6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...................................................................... 11

*Crossen v. CV Therapeutics*,
    No. C 03-03709 SI,
    2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 9, 2005) .................................... 8

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) ................................................................. 7

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ................................................................. 10

*Morrison v. Nat'l Austl. Bank*,
    130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) .................................................... 2

*In re NPS Pharms., Inc. Sec. Litig.*,
    No. 2:06-cv-570, 2006 WL 6627948 (D. Utah Nov. 17, 2006) .................. 10, 12

*Richardson v. TVIA, Inc.*,
    No. C 06-6304 RMW,
    2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .................................................. 9

*Schriver v. Impac Mortgage Holdings, Inc.*,
    SACV 06-31 CJC (RNBx),
    2006 Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ........................................... 8

*Siegall v. Tibco Software, Inc.*,
    No. 05 Civ. 2146, 2006 WL 1050173
    (N.D. Cal. Feb. 24, 2006) ........................................................................ 8

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................... 9

*In re Surebeam Corp. Sec. Litig.*,
  No. 03-CV-1721 JM (POR),
  2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ............................................................ 9

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) .................................................................. 12

**DOCKETED CASES**

*Am. Int'l Group, Inc. Sec. Litig.*,
  No. 04-cv-8141 (S.D.N.Y.) ................................................................................... 12

*Conway Inv. Club v. Corinthian Colls., Inc.*,
  No. 2:04-cv-05025, slip op. (C.D. Cal. Nov. 1, 2004) .......................................... 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
  No. 07-cv-5295 (C.D. Cal.) ................................................................................... 12

*Marsden v. Select Med. Corp.*,
  No. 04-4020, slip op. (E.D. Pa. Oct. 5, 2006) ....................................................... 11

*In re Monster Worldwide, Inc. Sec. Litig.*,
  No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. Mar. 15, 2007) ............................................ 12

*Pappas v. Countrywide Fin. Corp.*,
  No. 07-cv-5295, slip op. (C.D. Cal. Nov. 28, 2007) ........................................... 7-9

**STATUTES**

15 U.S.C. § 78u-4(a)(3) et seq. .................................................................................*passim*

Fed. R. Civ. P. 23(a) ........................................................................................................ 8

**MISCELLANEOUS**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.A.A.N. 730 ............................................................. 3, 10

S. Rep. No. 104-98 (1995),
  *reprinted in* 1995 U.S.C.A.A.N. 679 .................................................................. 3

1    This is a motion for the appointment of lead plaintiff and approval of
2 selection of counsel in the above-captioned matter (the "Action") on behalf of a
3 class of purchasers of securities of Corinthian Colleges, Inc. ("Corinthian" or the
4 "Company") between October 30, 2007 and August 19, 2010, inclusive (the "Class
5 Period"), pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"),
6 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform
7 Act of 1995 ("PSLRA").  The Ninth Circuit set out a straightforward procedure for
8 district courts to follow in applying the PSLRA's lead plaintiff/lead counsel
9 provisions in *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).
10    Class members KBC Asset Management NV ("KBC") and Electrical
11 Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") respectfully submit this
12 Memorandum of Points and Authorities in support of their motion for an order:
13 (1) appointing KBC and Local 103 as Lead Plaintiff of a class of purchasers of
14 Corinthian securities during the Class Period (the "Class"); (2) approving KBC and
15 Local 103's selection of Motley Rice LLC ("Motley Rice") and Labaton Sucharow
16 LLP ("Labaton Sucharow") as Co-Lead Counsel; and (3) granting such other and
17 further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

19    This case involves allegations against Corinthian, an owner and operator of
20 for-profit colleges ("FPCs") that subsist on federal student loan funds, and certain
21 of its officers and directors (collectively, "Defendants") for violations of the
22 Exchange Act.  Corinthian's stock is listed on the Nasdaq National Market System
23 ("NASDAQ Exchange") under the ticker symbol "COCO."  During the Class
24 Period, Defendants knowingly engaged in fraudulent practices to dramatically
25 increase Corinthian's stock price.  These fraudulent practices centered on a
26 manipulation of the Company's revenue, revenue guidance, and other key metrics
27 that determined Corinthian's financial health, and ensured that the Company would
28 continue to qualify for federal funding.

Pursuant to the PSLRA, the Court should appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the movant with the "largest financial interest" in the relief sought by the Class that has made a *prima facie* showing that it meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3) (B)(iii)(I).

KBC, based in Belgium, and Local 103, based in the United States, purchased Corinthian stock on the NASDAQ Exchange in the United States. Notably, the U.S. Supreme Court's "transactional test" for determining whether an investor can pursue Exchange Act claims in a U.S. court is satisfied when a plaintiff purchases shares on a U.S. stock exchange. *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2886, 177 L. Ed. 2d 535 (2010). Accordingly, KBC and Local 103 meet *Morrison*'s transactional test, and their Exchange Act claims can be heard by the Court.

As set forth in detail below, KBC and Local 103 lost $2,180,935 as calculated under the last-in-first-out ("LIFO") loss methodology[1] on their investments in Corinthian securities during the Class Period. A copy of the PSLRA-required Certifications submitted by KBC and Local 103 are attached as Exhibit A to the accompanying Declaration of Stefanie J. Sundel ("Sundel Decl."). These Certifications set forth all of the transactions of KBC and Local 103 in Corinthian securities during the Class Period. In addition, a chart reflecting the calculation of KBC and Local 103's financial losses on Corinthian securities purchased during the Class Period is attached as Exhibit B to the Sundel Declaration. In light of the transactions and significant losses reflected in these exhibits, KBC and Local 103 have a substantial financial interest in the relief

---

[1] KBC and Local 103 have also lost the same amount, $2,180,935, under the first-in-first-out ("FIFO") loss calculation methodology.

sought by this litigation—an interest believed to be greater than that of any competing movant.

KBC and Local 103 also meet the adequacy and typicality requirements of Rule 23, as demonstrated below. In enacting the PSLRA, Congress expressly intended to encourage institutional investors like KBC and Local 103 to serve as lead plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 (1995) at 6, *reprinted in* 1995 U.S.C.A.A.N. 679, 685. KBC and Local 103 are both sophisticated institutional investors with the requisite knowledge, experience, resources, and motivation—in the form of their significant financial interest—to control the litigation of the Action.

Pursuant to the PSLRA, the lead plaintiff selects lead counsel, subject to the Court's approval. KBC and Local 103 request the Court to appoint their choice of Motley Rice and Labaton Sucharow as Co-Lead Counsel for the Class.

## STATEMENT OF FACTS

A complaint was filed against Corinthian in this Court on August 31, 2010, asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Specifically, the complaint alleges that during the Class Period, Defendants made false and misleading statements that fraudulently inflated the price of Corinthian's stock and the appearance of its growth prospects by: (1) using manipulative recruiting tactics and fraudulently inducing students to enroll; (2) failing to disclose illicit and improper recruiting activities; (3) failing to disclose that its student loan repayment rates did not comply with federal requirements for funding under Title IV of the Higher Education Act of 1965, as amended ("Title IV"); and (4) failing to maintain adequate internal, operational, or financial controls.

1 Founded in 1995, Corinthian[2] owns and operates FPCs which provide education opportunities to underprivileged populations.  The Company offers many levels of education (undergraduate, graduate, and doctoral levels) through 101 schools and learning centers in 25 states and Canada, as well as through an online educational delivery system.  The Company has three distinct FPC school brands: Everest, WyoTech, and Heald College.

In 2009, 89 percent of Corinthian's revenue came from the U.S. Federal Treasury, much of which consisted of government student loan funds under Title IV.  To remain eligible for Title IV funding, schools must maintain repayment rates above 35 percent.[3]  During the Class Period, Corinthian used improper recruitment and enrollment tactics in order to manipulate repayment rate figures so that the Company would continue receiving Title IV funding.  In doing so, it became increasingly apparent that Corinthian victimizes the very same at-risk groups it claims to serve.

In its securities filings and public statements throughout the Class Period, Corinthian extolled the Company's: student enrollment growth rates; regulatory compliance; thorough and probing recruitment practices; proactive student loan default management programs that helped curb default rates; successful education and placement of students; and revenue figures that properly accounted for Title IV funds.  All of these representations hid the dark underbelly of Corinthian's improper practices.

The truth emerged through three partial corrective disclosures, on August 3-4, August 13, and August 20, 2010.  The first disclosure revealed that the U.S.

---

[2] Corinthian is a Delaware corporation with its principal place of business in this District.  The Company had its initial public offering in 1999.

[3] A repayment rate is the rate at which debt holders repay the amount they owe. By contrast, a default rate is the rate at which debt holders default on the amount they owe.

General Accounting Office had sampled 15 FPCs and found rampant use of manipulative recruiting tactics and fraudulent enrollments that artificially inflated financial results. The second disclosure notified the market that the U.S. Department of Education had determined that 33 of 86 of Corinthian's Everest colleges had loan repayment rates of less than 20 percent when the minimum requirement for Title IV funding is 35 percent. Finally, the Company announced that its default rates for 2009 had trended "substantially higher" than those for 2008 and that, as a result, Corinthian would suspend enrollment of students most at risk to default on their loans.

As a result of each of these partial disclosures, the price of Corinthian's common stock dropped precipitously, approximately 16 percent, 22 percent, and 16 percent, respectively. The Company's conduct and the revelations thereof have caused Corinthian's stockholders to lose hundreds of millions of dollars.

## ARGUMENT

### I. KBC AND LOCAL 103 SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

#### A. The Procedure Mandated by the PSLRA for Appointment of Lead Plaintiff

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the first action shall publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice in the Action was published on September 1, 2010 on *GlobeNewswire*. *See* Sundel Decl. Ex. C.

Second, within 90 days after the publication of the notice of pendency, or as soon as practicable after the consolidation of multiple related cases if consolidation occurs after the expiration of the 90-day period, the Court shall consider any

motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides the following standard for determining who is the "most adequate plaintiff":

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice [within 60 days of publication of the notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 . . . .

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cavanaugh*, 306 F.3d at 729-30. As set forth below, KBC and Local 103 are the "most adequate plaintiff" here.

**B.    KBC and Local 103 Are the "Most Adequate Plaintiff"**

  **1.    KBC and Local 103 Have Made a Timely Motion for Appointment as Lead Plaintiff**

The 60-day period under the PSLRA in which motions for appointment as lead plaintiff must be filed expires on November 1, 2010. KBC and Local 103 have timely filed their motion.

This motion includes the required certifications from KBC and Local 103 setting forth, among other things, transactions in Corinthian securities during the Class Period, and indicating that they have reviewed a complaint filed in the Action and are each willing to serve as a representative party on behalf of the Class. *See* Certifications, Sundel Decl. Ex. A. In addition, KBC and Local 103

have retained competent and experienced counsel, as set forth in their respective firm resumes.  *See* Firm Resumes, Sundel Decl. Exs. D-E.

### 2. KBC and Local 103 Have the Largest Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), the Court shall appoint as lead plaintiff the movant or movants who have the largest financial interest in the relief sought by the action.  "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status . . . ."  *Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (quoting *In re Cavanaugh*, 306 F.3d at 732).  KBC and Local 103, with losses of $2,180,935 under either the LIFO or FIFO loss calculation methodology, believe they have the largest known financial interest in the relief sought by the Class.  *See* Loss Analysis, Sundel Decl. Ex. B.  Courts in this District and across the country overwhelmingly endorse LIFO and reject FIFO when determining which movant has the "largest financial interest" in actions filed under the PSLRA.  *See, e.g.*, *Pappas v. Countrywide Fin. Corp.*, No. 07-cv-5295, slip op. at 14 (C.D. Cal. Nov. 28, 2007) (Pfaelzer, J.), Sundel Decl. Ex. F ("Courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.") (internal quotation marks and citation omitted); *Arensen v. Broadcom Corp.*, No. SA CV 02-301GLT, 2004 WL 3253646, at *1-2 (C.D. Cal. Dec. 6, 2004) (Taylor, J.) ("[a] number of courts have spoken clearly on this issue, treating it as a pure question of law and finding the FIFO methodology improper").

### 3. KBC and Local 103 Otherwise Satisfy the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 . . . ."  Rule 23(a) provides

that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *See Countrywide*, slip op. at 15, Sundel Decl. Ex. F ("In particular, the potential lead plaintiff must make a prima facie showing of the 'typicality' and 'adequacy' requirements of Rule 23 class certification. 'Numerosity' and 'commonality' need not be shown because they are class requirements more properly directed towards the class as a whole." (citation omitted)); *Siegall v. Tibco Software, Inc.*, No. 05 Civ. 2146, 2006 WL 1050173, at *5 (N.D. Cal. Feb. 24, 2006) ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors."). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Schriver v. Impac Mortgage Holdings, Inc.*, SACV 06-31 CJC (RNBx), 2006 Dist. LEXIS 40607, at *15-16 (C.D. Cal. May 1, 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it would be on a motion for class

certification; the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors.").

### (a) KBC and Local 103 Fulfill the Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when representative plaintiffs' claims arise out of the same event or course of conduct as do the other class members' claims, and are based on the same legal theories. *See Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396, at *13-14 (N.D. Cal. Aug. 9, 2005); *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 349 (S.D. Cal. 1998). Rule 23(a) requires only that resolution of the common questions affect all, or a substantial number of, class members. *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000). Here, KBC and Local 103 purchased Corinthian shares during the Class Period at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants, and were damaged by Defendants' alleged violations of federal securities laws. Because KBC and Local 103's claims are premised on the same legal and remedial theories and are based on the same types of alleged misrepresentations and omissions as the Class' claims, typicality is satisfied. *See Countrywide*, slip op. at 17, Sundel Decl. Ex. F; *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-1721 JM (POR), 2004 WL 5159061, at *6 (S.D. Cal. Jan. 5, 2004).

### (b) KBC and Local 103 Fulfill the Adequacy Requirement

KBC and Local 103 will also fairly and adequately protect the interests of the Class. The adequacy requirement is met if there are no conflicts between the representative's and class' interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *See Richardson v. TVIA, Inc.*, No. C 06-6304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing Fed. R. Civ. P. 23(a)(4) and *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th

1  Cir. 2003)).  KBC and Local 103 have indicated that they will protect the interests
2  of the Class, as reflected in their Certifications affirming their interest in
3  participating as lead plaintiff in the Action.  *See* Certifications, Sundel Decl. Ex. A.
4  KBC and Local 103's interests in the Action are perfectly aligned with the interests
5  of absent Class members, and Motley Rice and Labaton Sucharow, their selected
6  Co-Lead Counsel, have decades of experience in effectively prosecuting securities
7  class actions.  Accordingly, the Court can be assured that KBC, Local 103, and
8  their selected counsel will more than adequately protect the interests of absent
9  Class members.

### 4. KBC and Local 103 Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions of the PSLRA was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.A.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Congress reasoned that increasing the role of institutional investors, which typically have large financial stakes in the outcome of the litigation, would be beneficial because institutional investors with large financial stakes are more apt to effectively manage complex securities litigation.

KBC is an institutional investor that is familiar with the provisions governing the appointment of lead plaintiffs in PSRLA actions.  KBC is a Belgian asset management company responsible for managing mutual funds, private funds,

and institutional funds.[4]  Local 103, an electrical workers union in Eastern Massachusetts with a 100-year history, manages more than $1 billion in assets.

KBC and Local 103 are sophisticated institutional investors with proven track records serving as fiduciaries to absent class members, and possess sufficient resources to adequately litigate the Action and supervise Class counsel.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff).  KBC and Local 103 have the requisite experience and expertise to vigorously represent the Class in leading the Action.  *See* Certifications, Sundel Decl. Ex. A.  Moreover, because KBC and Local 103 have served as lead plaintiff in other securities actions, *see id.*, their experience overseeing securities litigation will be a great benefit to the Class.

Accordingly, as demonstrated above, KBC and Local 103 are the prototypical lead plaintiffs, satisfy the requirements of the PSLRA, and should be appointed Lead Plaintiff.

---

[4] The fact that KBC is a foreign investor in no way affects its ability to adequately represent the Class. This is especially true given that KBC's purchases occurred on the NASDAQ Exchange. *See In re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-cv-570, 2006 WL 6627948, at *3-4 (D. Utah Nov. 17, 2006) (rejecting argument that foreign institutional investor that bought shares of a U.S. company on a U.S. exchange may be subject to the unique defenses of subject matter jurisdiction and res judicata).  Courts across the country have frequently appointed foreign investors lead plaintiffs in putative securities class actions.  *See, e.g., In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005) (observing that a foreign lead plaintiff movant was "correct in its assertion that many courts . . . have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors led by a German investment firm was entitled to appointment as lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status).  *See also Conway Inv. Club v. Corinthian Colls., Inc.*, No. 2:04-cv-5025 (C.D. Cal. Nov. 1, 2004), Sundel Decl. Ex. G (foreign investor appointed as lead plaintiff).

## II. THE COURT SHOULD APPROVE KBC AND LOCAL 103'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. Motley Rice has substantial experience in the prosecution of shareholder and securities class actions. *See* Motley Rice Firm Resume, Sundel Decl. Ex. D. As a district court noted when appointing Motley Rice Co-Lead Counsel in *Marsden v. Select Medical Corp.*, No. 04-4020, slip op. at 1 (E.D. Pa. Oct. 5, 2006), "Motley Rice possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class." *See* Sundel Decl. Ex. H. Also, in *NPS Pharmaceuticals*, 2006 WL 6627948, at *4, the court stated that "[a]s demonstrated by [its] submissions to the court, [Motley Rice has] expertise and experience in the prosecution of shareholder and securities class actions and, as a result, [is] adequate to represent the interests of the class."

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel *In re American International Group, Inc. Securities Litigation*, 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion. Labaton Sucharow is also lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date. Additionally, Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). In addition, Labaton Sucharow is currently serving as lead or co-lead

1  counsel in the securities fraud cases against HealthSouth, Bear Stearns, Fannie
2  Mae, Satyam, Royal Bank of Scotland, and others.  *See* Labaton Sucharow Firm
3  Resume, Sundel Decl. Ex. E.  In *In re Monster Worldwide, Inc. Securities*
4  *Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007),
5  Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the
6  Labaton firm is very well known to . . . courts for the excellence of its
7  representation."  *See* Sundel Decl. Ex. I.
8       Because there is nothing to suggest that KBC, Local 103, or their counsel
9  will not fairly and adequately represent the Class, or that KBC and Local 103 are
10 subject to unique defenses, this Court should appoint KBC and Local 103 as Lead
11 Plaintiff and approve their selection of Motley Rice and Labaton Sucharow to
12 serve as Co-Lead Counsel for the Class.

## CONCLUSION

14      For the foregoing reasons, KBC and Local 103 respectfully request that the
15 Court: (1) appoint KBC Asset Management NV and Electrical Workers Pension
16 Fund, Local 103, I.B.E.W. as Lead Plaintiff; (2) approve their selection of Motley
17 Rice LLC and Labaton Sucharow LLP as Co-Lead Counsel for the Class; and
18 (3) grant such other and further relief as the Court may deem just and proper.

19 Dated: November 1, 2010                    Respectfully submitted,

20                                            By: */s/ Mark Labaton*

21                                            Mark Labaton (Bar No. 159555)
                                              mlabaton@motleyrice.com
22                                            **MOTLEY RICE LLP**
23                                            1100 Glendon Avenue, 14th Floor
                                              Los Angeles, California  90024
24                                            Telephone: (310) 500-3488
25                                            Facsimile: (310) 824-2870

26                                            William H. Narwold
                                              bnarwold@motleyrice.com
27                                            James M. Hughes
28                                            jhughes@motleyrice.com

| | |
|---|---|
| 1 | **MOTLEY RICE LLC** |
| 2 | 28 Bridgeside Blvd. |
|   | Mt. Pleasant, South Carolina  29464 |
| 3 | Telephone: (843) 216-9000 |
|   | Facsimile: (843) 216-9440 |
| 4 | |
| 5 | Christopher J. Keller |
|   | ckeller@labaton.com |
| 6 | Stefanie J. Sundel |
|   | ssundel@labaton.com |
| 7 | Rachel A. Avan |
| 8 | ravan@labaton.com |
|   | **LABATON SUCHAROW LLP** |
| 9 | 140 Broadway |
| 10 | New York, New York  10005 |
|    | Telephone: (212) 907-0700 |
| 11 | Facsimile: (212) 818-0477 |

*Attorneys for KBC Asset Management NV and Electrical Workers Pension Fund, Local 103, I.B.E.W., and Proposed Co-Lead Counsel for the Class*