1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JIMMY ELIAS KARAM, Individually and on Behalf of All Others Similarly Situated, )<br>)<br>)<br>) | No. 2:10-cv-06523-GHK(RCx) |
| Plaintiff, )<br>) | <u>CLASS ACTION</u> |
| vs. )<br>) | JOINT SUBMISSION REGARDING LEAD PLAINTIFF MOTIONS |
| CORINTHIAN COLLEGES, INC., et al., )<br>)<br>) | |
| Defendants. )<br>) | |

593355_1
593355_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   WYOMING AND PMT ............................................................................. 2

    A.    Wyoming and PMT Are the Presumptive Lead Plaintiff .................. 3

        1.    Wyoming and PMT Suffered Greater Losses Than Any Other Movant .................................................................... 4

        2.    Wyoming and PMT Also Satisfy the Rule 23 Requirements ............................................................... 5

    B.    Arkansas/Northamptonshire Are Ineligible for the PSLRA's Presumption ...................................................................... 7

    C.    Mr. Karam's Filings in this Litigation Demonstrate His Inadequacy .................................................................. 10

III.  ARKANSAS TEACHERS AND NORTHAMPTONSHIRE ..................... 11

    A.    Arkansas Teachers and Northamptonshire Have the Largest Financial Interest in the Relief Sought by the Class .......................... 11

    B.    Arkansas Teachers and Northamptonshire Are an Appropriate Lead Plaintiff Group ......................................................... 15

    C.    Arkansas Teachers and Northamptonshire Otherwise Satisfy the Requirements of Rule 23 ................................................. 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Applestein v. Medivation, Inc.*,
   No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)...................12

*Brodsky v. Nat'l Golf Prop.*,
   No. 2:02-cv-01383-GHK-RZ (C.D. Cal. May 14, 2002).........................................19

*Brooks v. Interlink Elec. Inc.*,
   No. 05-cv-8133 PA (SHx) (C.D. Cal July 14, 2006).........................................12, 14

*Brown v. Brewer*,
   No. 2:06-cv-03731-GHK-SH (C.D. Cal.)...............................................................3

*Brown v. Medtronic, Inc.*,
   No. 09-2524, 2010 WL 5059594 (8th Cir. Dec. 13, 2010)...................................14

*Chill v. Green Tree Fin. Corp.*,
   181 F.R.D. 398 (D. Minn. 1998)...........................................................................19

*City of Ann Arbor Emps. Ret. Sys. v. Accuray Inc.*,
   No. C 09-03362, 2009 U.S. Dist. LEXIS 105466 (N.D. Cal. Oct. 26, 2009)..........16

*City of Marysville General Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
   No. CV-09-659-EJL-CWD, 2010 WL 2000040 (D. Idaho May 19, 2010)...........19

*City of Southfield Fire and Police Retirement System v. Beckman Coulter, Inc.*,
   No. 10-cv-1327 (C.D. Cal.) ...................................................................................19

*Cohen v. U.S. Dist. Court for Northern Dist. of California*,
   586 F.3d 703 (N.D. Cal. 2009) .............................................................................19

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)........................................................................................ *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 U.S. Dist. LEXIS 64633 (N.D. Cal. 2008) ....................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)........12, 14, 15

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ..............................................................16, 18, 19

*Foley v. Transocean Ltd.*,
   2011 U.S. Dist. LEXIS 1541 (S.D.N.Y. Jan. 3, 2011) .............................................8

593355_1

**Page**

*General Electric Sec. Litig.*,
   No. 09-cv-1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009)......................................13

*Igor Cherednichenko v. Quarterdeck Corp.*,
   No. 2:97-cv-04320-CM-CW (C.D. Cal. Sept. 5, 1997) ......................................................19

*In re Bank of America Corp. Sec. Derivative and ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ......................................................................................20

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ..............................................................................2

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................................... *passim*

*In re Comverse*,
   No. 06-CV-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..............12, 13, 15

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ....................................................................................2, 3

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .............................................................................12

*In re Enron Corp. Sec.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ..............................................................................2

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D 447 (C.D. Cal. 2002) ......................................................................................6

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ....................................................................................14

*In re MGM Mirage Sec. Litig.*,
   No. 2:09-cv-01558, 2010 U.S. Dist. LEXIS 120061 (D. Nev. Oct. 25, 2010) ......................16

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................12

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   Case No. 01-cv-1451 (D. Colo.) .......................................................................................3

*In re Silicon Storage Tech., Inc.*,
   No. C 05-295 PJH, 2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005)...................11, 14

593355_1

**Page**

*In re UTStarcom, Inc. Sec Litig.*,
No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)......................................14

*In re Versata, Inc. Sec. Litig.*,
No. C 01-1439 SI, C 01-1559 SI, C 01-1703 SI, C 01-1786 SI, 2001 WL 34012374
(N.D. Cal. Aug. 20, 2001).................................................................................................16

*Johnston Investment Counsel, Inc. v. Transocean Ltd.*,
No. 10-cv-4515, Docket #42 at 3 (S.D.N.Y. Oct. 8, 2010) .....................................................9

*Mohanty v. BigBand Networks, Inc.*,
No. C07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) .........................................11

*New Hampshire v. Maine*,
532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).........................................................8

*Schriver v. Impac Mortg. Holdings, Inc.*,
2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006).....................................................5, 6, 9

*Takeda v. Turbodyne Techs., Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) .....................................................................11, 18

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) .............................................................................18

*United States v. Wright*,
215 F.3d 1020 (9th Cir. 2000) .................................................................................9

*Weisz v. Calpine Corp.*,
2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .......................................................12

*Yanek v. Staar Surgical Co.*,
Nos. CV 04-8007 SJO Nos. CV 04-8007 SJO (CWx), CV 04-8263 SJO (CWx), CV
04-8613 SJO (CWx), 2004 WL 5574358 (C.D. Cal. Dec. 15, 2004)..............................16, 18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)................................................................................................................5
§78u-4(a)(3)(A).................................................................................................9
§78u-4(a)(3)(B)(i)..............................................................................................1
§78u-4(a)(3)(B)(iii)(I)..................................................................................1, 11, 16
§78u-4(a)(3)(B)(iii)(II).................................................................................6, 17
§78u-4(a)(3)(B)(iii)(II)(aa)...........................................................................8, 19
§78u-4(a)(3)(B)(v)............................................................................................19

593355_1

1

2

**Page**

3  Federal Rules of Civil Procedure
        Rule 23 ................................................................................................ *passim*
4       Rule 23(a).................................................................................................4

5  17 C.F.F.
        Rule 10b-5.................................................................................................5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

593355_1

1  **I.     INTRODUCTION**

2         Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

3  the Court is to appoint as lead plaintiff the movant with the "largest financial interest

4  in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23

5  of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

6         On November 29, 2010, the Court directed the parties to meet and confer

7  regarding the lead plaintiff motions.  The parties were unable to reach an agreement as

8  to which of the movants should be appointed as lead plaintiff.  As such, Wyoming

9  Retirement System and Stichting Pensioenfonds Metaal en Techniek and Arkansas

10  Teacher Retirement System and Northamptonshire County Council Pension Fund

11  respectfully submit this joint submission to assist the Court in resolving the motions.[1]

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25  [1]     Defendants have been consulted concerning the dispute over the selection of
lead plaintiff and lead counsel.  Defendants do not believe that any Plaintiff has stated
26  or will be able to state a claim, and dispute Plaintiffs' contentions to the contrary in
this submission.  However, Defendants take no position with respect to the selection
27  of lead plaintiff and lead counsel, respectfully reserving their arguments concerning
the defects in Plaintiffs' claims for Defendants' anticipated motion to dismiss.

28

- 1 -

## II.     WYOMING AND PMT

The Wyoming Retirement System and Stichting Pensioenfonds Metaal en Techniek ("PMT") (collectively, "Wyoming and PMT"), respectfully submit they should be appointed to serve as lead plaintiff because:

- Wyoming and PMT have the "largest financial interest in the relief sought by the class" regardless of which method is utilized by the Court;

- Wyoming and PMT are typical and adequate; indeed, no movant made **any** arguments to the contrary;

- Wyoming and PMT were the only movants who **timely** submitted a Joint Declaration evidencing their typicality, adequacy and ability to cohesively serve as lead plaintiff; and

- Wyoming and PMT selected only one firm to serve as lead counsel which will avoid duplication of effort and redundant fees and expenses.

Stated simply, Wyoming and PMT's motion should be granted because they meet all of the PSLRA's requirements. *See In re Cavanaugh*, 306 F.3d 726, 729-732 (9th Cir. 2002).

Wyoming and PMT also selected a law firm with a distinguished pedigree in prosecuting securities cases on behalf of injured investors in this District and around the country to serve as lead counsel: Robbins Geller Rudman & Dowd LLP. *See In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 636 (C.D. Cal. 2009) (Carney, J.) (noting that it was "undisputable" that Robbins Geller lawyers have "extensive experience prosecuting suits of this nature").[2]   In selecting Robbins Geller, Wyoming and PMT explained that the following characteristics were important: "(a) a thorough

---

[2]       Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).   Similarly, Judge Algenon L. Marbley, in approving the $600 million recovery by Robbins Geller attorneys in *Cardinal Health*, noted that the "quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Lawyers with Robbins Geller are "nationally recognized leaders in complex securities litigation class actions.   The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

593355_1

understanding of the specific case and the law; (b) a demonstrated commitment to prosecuting securities class actions in the class's interests; (c) sufficient resources to handle the litigation on their own, without the assistance of co-lead counsel; and (d) a demonstrated ability to prepare the case for trial, if necessary."  Docket #27-4, ¶7 (Joint Declaration).  Robbins Geller possesses each of these qualities.  *Id.*  In addition, Robbins Geller attorneys are responsible for obtaining not just the largest securities fraud class action recovery ever, but the largest securities class action recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits as well.[3]  This Court is also familiar with Robbins Geller's vigorous prosecution of a securities class action.  *See Brown v. Brewer*, No. 2:06-cv-03731-GHK-SH (C.D. Cal.) ($45 million cash settlement pending preliminary approval by this Court).  Wyoming and PMT's selection of Robbins Geller to serve as lead counsel further evidences their adequacy.

Based on Wyoming and PMT's satisfaction of the PSLRA's requirements and selection of a single, experienced law firm to represent the class, Wyoming and PMT respectfully submit that their motion should be granted.

## A.    Wyoming and PMT Are the Presumptive Lead Plaintiff

The PSLRA requires the Court to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730.  The Court "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and

---

[3]     *See In re Enron Corp. Sec.*, Case No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion recovery for the class is largest in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (S.D. Ohio) (Marbley, J.) ($600 million recovery for the class was, at the time, the 10th largest in U.S. history and is still the largest recovery ever in the Sixth Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, Case No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J.) ($925 million recovery for the class represents the largest recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, Case No. 01-cv-1451 (D. Colo.) ($445 million recovery for the class is the largest recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala.) ($671 million recovery for the class is the largest securities class action recovery settlement in the Eleventh Circuit).

declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* (emphasis in original). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.* at 730.

That movant here is Wyoming and PMT.

### 1. Wyoming and PMT Suffered Greater Losses Than Any Other Movant

Using a "rational and consistently applied" method as the Ninth Circuit mandates (*Cavanaugh*, 306 F.3d at 729, 730 n.4), like the movants' original loss estimates, there is no dispute that Wyoming and PMT suffered greater losses than any other movant:

| Movant | Estimated Loss |
|---|---|
| **Wyoming and PMT** | **$3.6 million** |
| Arkansas/Northamptonshire | $2.5 million |
| Jimmy Elias Karam | $5,678 |

*See* Docket #36 at 1, 3-4; Docket #40 at 1-2, 11.   And, even under Arkansas/Northamptonshire's contrived "recoverable loss" method, including all of the partial disclosures identified in the *Karam* and *Totten* complaints, Wyoming and PMT **still** suffered the greatest losses:

| Movant | "Recoverable" Loss |
|---|---|
| **Wyoming and PMT** | **$3 million** |
| Arkansas/Northamptonshire | $2.5 million |
| Jimmy Elias Karam | $5,678 |

*See* Docket #40 at 1-2, 11.[4]   Thus, Wyoming and PMT unquestionably satisfy the PSLRA's "largest financial interest" prong.

---

[4]     As previously articulated, Arkansas/Northamptonshire's belated and disingenuous introduction of the "recoverable loss" methodology here is inappropriate and should not be employed.  *See* Docket #40 at 3-12.

- 4 -

## 2.    Wyoming and PMT Also Satisfy the Rule 23 Requirements

Because Wyoming and PMT suffered the greatest losses as a result of defendants' alleged violations of §10(b) and Rule 10b-5, "further inquiry must focus on [Wyoming and PMT] and be limited to determining whether [they] satisf[y] the other statutory requirements." *Cavanaugh*, 306 F.3d at 732. As evidenced in their opening memorandum, Wyoming and PMT are typical and adequate. *See* Docket #26 at 4-6.

Indeed, Wyoming and PMT were the only movants who timely "submitted a joint declaration stating that they have already begun to confer with each other regarding the joint prosecution of the litigation, and have conferred with their counsel." *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *34 (C.D. Cal. 2006) (Carney, J.). Wyoming is a defined benefit program for public employees who have worked for the State of Wyoming. Wyoming has more than $7 billion in assets under management and is overseen by an 11-member board for the benefit of tens of thousands of members. Docket #27-4, ¶3. PMT is one of the three largest pension funds in the Netherlands with more than €37 billion under management for the benefit of hundreds of thousands of pensioners. *Id.*, ¶2. The funds "understand that it is the lead plaintiff's and lead counsel's obligation to vigorously prosecute this action on behalf of all class members and to maximize the recovery from all culpable parties." *Id.*, ¶5. Both funds purchased shares on the NASDAQ and "are dedicated to . . . achieving governance reform at Corinthian." *Id.* In addition, Wyoming and PMT "conferred with Robbins Geller to establish a preliminary protocol to oversee the prosecution of this action" to "ensure that this action is handled efficiently and to obtain an optimal result for class members." *Id.*, ¶8; *see also* ¶7 (outlining criteria for selection of counsel).

Nor do Wyoming and PMT "have any conflicts with class members, and their interests in fact appear perfectly aligned with class members' interests because they

1   seek a recovery based on the same alleged material misstatements and/or omissions

2   and for the same types of losses as those members." *Schriver*, 2006 U.S. Dist. LEXIS

3   40607, at *33.  In addition, Wyoming and PMT "have retained a competent and

4   experienced securities litigation law firm," Robbins Geller Rudman & Dowd LLP. *Id.*

5   Because Wyoming and PMT consist of "only two members – a manageable number –

6   and one law firm representing [them], there is no significant potential for

7   miscommunication, delay, intra-group conflict, or lack of supervision of group

8   counsel." *Id.* at *34. ***No class member has presented <u>any</u> arguments to the contrary***.

9   *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption rebuttable "only upon proof").[5]

10  "Based on [Wyoming and PMT's] small number of members, the qualifications

11  of its members and selected counsel, and its members' stated ability and willingness to

12  coordinate in the prosecution of this action," the Court should conclude that Wyoming

13  and PMT are the most adequate plaintiff and grant their motion for appointment as

14  lead plaintiff. *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *34-*35; *In re Gemstar-TV*

15  *Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D 447, 455 (C.D. Cal. 2002) (Manella, J.) ("the

16  fact that two institutional investors . . . would supervise a single law firm suggests that

17  the pension funds, rather than [counsel] would control this litigation").

18  Following the PSLRA's simple process, the Court should not even consider the

19  other movants' motions unless Wyoming and PMT are found inadequate or atypical.

20  *Cavanaugh*, 306 F.3d at 732.  Because Wyoming and PMT are both "willing to serve

21  and satisf[y] the requirements of Rule 23," however, the other motions should be

22  denied.  *Id.* at 730.

---

24  [5]   Counsel for Arkansas/Northamptonshire suggests that Wyoming is "not even a
25  [class] member." *See* Docket #39 at 2.  They are wrong.  As previously explained,
    Wyoming suffered almost $1 million in losses as a result of defendants' misconduct
26  regardless of the methodology employed by the Court.  *See* Docket #40 at 1, 11.
    Counsel's invitation to remove Wyoming from the class in a contrived attempt to
27  wrest the presumption from Wyoming and PMT should be declined.  *See* Docket #40
    at 3-12.

28

## B. Arkansas/Northamptonshire Are Ineligible for the PSLRA's Presumption

Unlike Wyoming and PMT, Arkansas/Northamptonshire are decidedly *not* the most capable investors to lead the class of damaged Corinthian shareholders here. *See* Docket #36 at 7-12. Wyoming and PMT previously explained in great detail a troubling confluence of events which led to Arkansas/Northamptonshire's assertion of a larger financial interest than Wyoming and PMT. *See* Docket #40 at 3-14. These sordid details may sound incredible. Yet Arkansas/Northamptonshire agree that absent the maneuvering detailed in Docket #40, they do not possess the largest financial interest, that is, *unless* the Court ignores the partial disclosures on February 2, 2010 and May 27, 2010 as articulated in the *Totten* complaint. *See* Docket #39 at 1 (discussing "first alleged disclosure" in the "pending complaint"); Docket #35 at 1, 2 (discussing the "currently pleaded disclosure" in the "currently-filed complaint"). ***But for the surreptitious dismissal of the <u>Totten</u> complaint (and its additional partial disclosures), there would be no argument against Wyoming and PMT's appointment as lead plaintiff***.

No longer constrained by the inconvenient facts alleged in the *Totten* complaint, Arkansas/Northamptonshire's counsel boast that "***[n]othing in the record before the Court*** provides any support or theory upon which Wyoming could recover its alleged losses under *Dura*." Docket #39 at 4; Docket #35 at 2. If only the facts and the law were so malleable. They are not. *See* Docket #40 at 3-12.

While the record ***as modified*** by Bernstein Litowitz, Grant & Eisenhofer and Pomerantz Haudek may advance Arkansas/Northamptonshire's position in a narrow (and artificial) sense, the existence of additional disclosures that the Court-appointed lead plaintiff will be duty-bound to assert on behalf of the class in this case remains unchanged notwithstanding the conveniently-timed dismissal of the *Totten* complaint. All that has been altered is Arkansas/Northamptonshire's ability to do so. *See New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)

1   ("'Where a party assumes a certain position in a legal proceeding, and succeeds in
2   maintaining that position, he may not thereafter, simply because his interests have
3   changed, assume a contrary position, especially if it be to the prejudice of the party
4   who has acquiesced in the position formerly taken by him.'") (citation omitted).
5   Indeed, by arguing against the partial disclosures asserted in *Totten*, counsel has
6   rendered Arkansas/Northamptonshire incapable of "fairly and adequately protect[ing]
7   the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

8        Furthermore, district courts are loathe to accept lawyer-driven machinations,
9   particularly in the context of PSLRA lead plaintiff motions.  *See Eichenholtz v.*
10  *Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. 2008)
11  (recognizing that "it is unclear why a plaintiff would argue for" a method "which
12  would have the effect of ***reducing*** the class size and limiting the potential amount of
13  damages, ***unless it was in the best interest of that particular plaintiff only***")
14  (emphasis added).  In fact, just two weeks ago, the court in *Foley v. Transocean Ltd.*,
15  2011 U.S. Dist. LEXIS 1541 (S.D.N.Y. Jan. 3, 2011), rejected a movant's attempt to
16  manipulate the PSLRA's largest financial interest test in its favor after the initial
17  motions were filed.  Specifically, Judge Buchwald held that "***there can be no question***
18  ***that the appropriate numbers to evaluate [a movant's financial interest] are the***
19  ***original ones***."  *Id.* at *14 (emphasis added); *see also* Docket #40 at 3-12 (articulating
20  why counsel's alternative test is flawed).[6]  Respectfully, this Court should not allow
21  Arkansas/Northamptonshire's counsel to take such whimsical liberties with the
22  PSLRA's "financial interest" test.  *Compare* Docket #21 at 5 (stating that their
23  "financial interest" was $2.6 million and not mentioning *Dura* or "recoverable" losses
24  ***at all***) *with* Docket #35 at 2 (revising their "financial interest" to $2.79 million

25  _____

26  [6]     Notably, Bernstein Litowitz, counsel for Arkansas/Northamptonshire here, is
      one of the firms representing the movant in *Foley* who argued that it is improper to
      veer off course and introduce a new financial interest test in an opposition brief.
27  *See Johnston Investment Counsel, Inc. v. Transocean Ltd.*, No. 10-cv-4515, Docket
      #42 at 3 n. 3 (S.D.N.Y. Oct. 8, 2010).
28

- 8 -

pursuant to *Dura* which, coincidentally, produced a larger loss than Wyoming and PMT's loss).

Even if the Court were inclined to overlook such troubling behavior, there are additional reasons why Arkansas/Northamptonshire cannot be appointed as lead plaintiff here. *See* Docket #36 at 7-12; Docket #40. For example, Arkansas/Northamptonshire finally submitted a Joint Declaration with their reply brief – an implicit acknowledgment of both the duty to make a showing of their group's adequacy and their inability to timely do so. *See* Docket #41, Ex. A. Courts in the Ninth Circuit, however, do not consider evidence presented for the first time in a reply brief. *See United States v. Wright*, 215 F.3d 1020, 1030 n.3 (9th Cir. 2000). Indeed, there is "no reason [Arkansas/Northamptonshire] could not have submitted such evidence in connection with their initial motions." *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *28 n.10; 15 U.S.C. §78u-4(a)(3)(A) (60-day deadline).

Ignoring the tardiness of the evidence, the Joint Declaration **confirms** the group's inability to coordinate. *See Schriver*, 2006 U.S. Dist. LEXIS 40607, at *21-*22 (expressing district courts' "reluctance to permit aggregation of individual investors' claimed losses to confer lead plaintiff status absent some showing that the proposed group members . . . will be able to coordinate their efforts"); *see also* Docket #36 at 7-12 (noting various infirmities plaguing Arkansas/Northamptonshire). Indeed, counsel failed to ensure that **both** Arkansas' and Northamptonshire's signatures were on hand prior to the November 23, 2010 reply brief deadline. *See* Docket #41, Ex. A at 10 (missing Northamptonshire's signature).[7] Such demonstrable lack of cohesion throughout the briefing process, combined with counsels' endeavor to manipulate the

---

[7]     Furthermore, Arkansas/Northamptonshire's sworn statements in the *ex post facto* Joint Declaration are in tension with Northamptonshire's sworn representations in its earlier certification. *Compare* Docket #24-2 at 5 of 7 (stating that Northamptonshire only retained Grant & Eisenhofer, **not** Bernstein Litowitz, to represent it) *with* Docket #44, Ex. A at ¶10 (stating that both funds "are aware that G&E and BLB&G have worked together").

1    financial interest test in their clients' favor while simultaneously harming the class,

2    warrant the Court's denial of Arkansas/Northamptonshire's motion.

3        **C.    Mr. Karam's Filings in this Litigation Demonstrate His Inadequacy**

4        In addition to claiming a mere fraction of Wyoming and PMT's losses, Mr.

5    Karam has not evidenced his ability to responsibly lead this action as a fiduciary for

6    the absent class members.   Quite the opposite.   Despite going it alone in his

7    opposition, Mr. Karam did not confirm his withdrawal from the Puerto Rico GERS

8    Group until he filed his reply memorandum.  *See* Docket #38 at 1.[8]  Indeed, Mr.

9    Karam's submissions likewise confirm his inability to oversee counsel.  *See* Docket

10   #40.  Consequently, Mr. Karam's motion should also be denied.

11   DATED: January 13, 2011                    Respectfully submitted,

12                                              ROBBINS GELLER RUDMAN
13                                               & DOWD LLP
                                                DARREN J. ROBBINS
14                                              DANIELLE S. MYERS

15

16                                                  s/ DANIELLE S. MYERS
                                                   DANIELLE S. MYERS
17
                                                655 West Broadway, Suite 1900
18                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
19                                              619/231-7423 (fax)

20

21

22

23

24

25   _____

26   [8]      Counsel for the rest of the Puerto Rico GERS Group specifically noted that Mr.
     Karam is "being represented by his own counsel separate and apart from the proposed
27   Lead Counsel selected by the Puerto Rico GERS Group as a whole" and that Mr.
     Karam's opposition brief was submitted "on his own behalf."  *See* Docket #50 at 1.

28

                                          - 10 -

III.    ARKANSAS TEACHERS AND NORTHAMPTONSHIRE

  A.    **Arkansas Teachers and Northamptonshire Have the
         Largest Financial Interest in the Relief Sought by the Class**

The Arkansas Teacher Retirement System ("Arkansas Teachers") and the Northamptonshire County Council Pension Fund ("Northamptonshire") are the presumptive Lead Plaintiff in this action because they have the "largest financial interest" in the relief sought by the Class.  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999).  The PSLRA creates a strong rebuttable presumption that the Lead Plaintiff is "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  When losses are properly calculated, Arkansas Teachers' and Northamptonshire's recoverable loss of approximately $2.8 million is 34% greater than Stichting Pensioenfonds Metaal en Techniek's ("Stichting") recoverable loss of $2.1 million.  As discussed herein, the Wyoming Retirement System ("Wyoming") has no recoverable loss.

Courts in this Circuit equate a movant's financial interest with the amount of plaintiff's "potential recovery" in the relief sought by the Class.  *See Cavanaugh*, 306 F.3d at 730 ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the ***most to gain*** from the lawsuit.") (emphasis added); *Mohanty v. BigBand Networks, Inc.*, No. C07-5101 SBA, 2008 WL 426250, at *4 (N.D. Cal. Feb. 14, 2008) ("[D]istrict courts typically equate 'largest financial interest' with the amount of potential recovery.") (citations omitted); *In re Silicon Storage Tech., Inc.*, No. C 05-295 PJH, 2005 U.S. Dist. LEXIS 45246, at *21 (N.D. Cal. May 3, 2005) (citing *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *5 (N.D. Cal. Aug. 19, 2002)); *In re Critical Path*, Inc. Sec. Litig., 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).

In accordance with this Circuit's emphasis on potential recovery when determining largest financial interest, this Court should only consider the losses each movant can ***recover*** in this litigation: losses incurred after the disclosure of the truth about Corinthian Colleges, Inc. ("Corinthian"), which caused the price of Corinthian common stock to decline.  *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (excluding losses incurred before first pleaded disclosure of the truth).  The Supreme Court has made clear that shareholders cannot recover losses incurred on shares sold prior to the disclosure of the truth.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  Consequently, because courts in this Circuit focus upon potential recovery, this Court should not consider such unrecoverable losses in its financial interest analysis.  *See Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *2 (N.D. Cal. Sept. 20, 2010) (explaining that without loss causation, plaintiffs "may not recover at all" because plaintiffs "purchased and sold stock at the inflated share price prior to [the corrective] disclosure.") (citations omitted); *Eichenholtz*, 2008 WL 3925289, at *2 ("failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation.") (quoting *In re Comverse*, No. 06-CV-1825(NGG)(RER), 2007 WL 680779, at *5 n.6 (E.D.N.Y. Mar. 2, 2007) ("Courts cannot include non-recoverable losses in a calculation of each litigant's financial interest."); *Brooks v. Interlink Elec. Inc.*, No. 05-cv-8133 PA (SHx), ECF No. 59 (C.D. Cal. July 14, 2006) (excluding losses incurred on sales of shares prior to the first disclosure of alleged wrongdoing).[9]

Indeed, applying *Dura* to this case reveals that Wyoming has no recoverable losses because it sold ***all*** of its Corinthian common stock prior to any disclosure of the truth alleged in the complaint.  The only pending complaint alleges that the first

---

[9]    A copy of the Order Appointing Lead Plaintiff is attached as Exhibit A to the Stickney Joint Brief Decl.

593355_1

1  disclosure of Corinthian's alleged fraud occurred on August 3, 2010.  *See* First

2  Amended Complaint, ¶¶54, 56 (ECF No. 6).  However, Wyoming had sold all of its

3  shares of Corinthian common stock by July 29, 2010 – several days before the August

4  3 disclosure.  *See* Exhibits B and C to the Myers Decl. (ECF Nos. 27-2, 27-3).

5  Significantly, Wyoming's and Stichting's Lead Plaintiff motion concedes that August

6  3, 2010 was the first date that Corinthian's alleged fraud was partially disclosed.  *See*

7  Memorandum of Law, ECF No. 26, at p. 2. ("On August 3, 2010, the U.S. General

8  Accounting Office issued a report that concluded that for-profit educational

9  institutions such as Corinthian had engaged in an illegal and fraudulent course of

10  action.").

11       Wyoming's and Stichting's belated effort to direct the Court to facts outside the

12  pleaded complaint must be rejected.  At this stage of the litigation, the Court may only

13  consider allegations pleaded in the pending complaint.  *See In re Comverse*, 2007 WL

14  680779, at *5 ("*Dura* . . . require[s] a court to make pre-discovery loss causation

15  determinations regarding asserted claims. . . that are based on the facts alleged in the

16  complaint."); *General Electric Sec. Litig.*, No. 09-cv-1951 (DC), 2009 WL 2259502,

17  at *4 (S.D.N.Y. July 29, 2009) (courts must consider pleaded partial disclosures in

18  determining financial interest).  Indeed, asking the Court to consider facts outside the

19  complaint highlights the fact that, based on the currently pleaded allegations,

20  Wyoming and Stichting cannot show that their claimed losses were caused by the

21  alleged fraud and are, therefore, unrecoverable.[10]  Importantly, the facts outside the

22  complaint that Wyoming and Stichting now allege support their claimed losses have

23  always been public, and if those facts were as significant as Wyoming and Stichting

24  now contend, they should have raised them in their opening brief or filed their own

25  _____

26  [10]    Wyoming's and Stichting's conspiracy theories about the withdrawal of a
complaint filed on the eve of the lead plaintiff deadline fail.  *See* Wyoming and PMT's

27  Reply, ECF No. 40, at pp 5-9.  Neither Arkansas Teachers nor Northamptonshire have
any relationship with the party that filed the withdrawn complaint.

28

1  complaint to place those facts properly before the Court.  Their failure to do so raises

2  serious questions about their ability to adequately represent the Class.[11]

3       Because Wyoming sold all of its Corinthian common stock prior to the first

4  corrective disclosure alleged in the pending complaint, it has no recoverable losses,

5  and therefore should be removed from the Court's financial interest calculus.

6  Similarly, once Stichting's unrecoverable losses are excluded, Stichting's loss is

7  drastically reduced from $2.6 million to $2.1 million—a decline of almost 20%.[12]

8       *Eichenholtz* is instructive.  In that case, the court excluded from its financial

9  interest analysis losses recognized on shares that were bought and sold before the

10  disclosure of the truth.  *Eichenholtz*, 2008 WL 3925289, at *4.  The court noted that

11  "it is difficult, if not [] impossible, to demonstrate loss causation for shares bought

12  ***and*** sold before the disclosure of the misstatements or omissions." *Id.* (emphasis in

13  original).  Similarly, in *In re Comverse*, the District Court reversed the Magistrate

14  Judge's appointment of a Lead Plaintiff whose claimed loss "resulted from 'in-and-

15  out' transactions, which [occurred] during the class period, but before the misconduct

16  identified in the complaint was ever revealed to the public." *In re Comverse*, 2007

17  _____

18  [11]    Even if Wyoming's unrecoverable losses are included in the Court's financial

19  interest calculation (they should not be), its unique circumstance of selling all of its
    Corinthian common stock before the first partial disclosure of the truth pleaded in the

20  complaint or cited in Wyoming's own motion renders it an inadequate and atypical
    Class representative. *See Interlink*, attached as Exhibit A to the Stickney Joint Brief

21  Decl.  First, because Wyoming sold all of its Corinthian common stock before the first
    pleaded partial disclosure, it may be unable to prove loss causation. *See In re Silicon*

22  *Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246 at *26.  Second, Wyoming may not
    be a member of the Class it seeks to represent. *See In re Juniper Networks, Inc. Sec.*

23  *Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009); *In re UTStarcom, Inc. Sec Litig.*, No. C
    04-04908 JW, 2010 WL 1945737, at *11-12 (N.D. Cal. May 12, 2010).  Third,

24  Wyoming might not even have standing to bring this action on behalf of the Class.
    *See Brown v. Medtronic, Inc.*, No. 09-2524, 2010 WL 5059594, at *6 (8th Cir. Dec.

25  13, 2010).

26  [12]    Stichting alleges almost $550,000 in unrecoverable losses on the sale of
    171,110 shares of Corinthian common stock before the first pleaded partial disclosure

27  of the truth on August 3, 2010.  *See* Exhibits B and C to the Myers Decl. (ECF Nos.
    27-2, 27-3).

28

WL 680779, at *3.   As in *Eichenholtz* and *Comverse*, here, the losses Stichting incurred before the first pleaded partial disclosure of the truth on August 3, 2010 must be eliminated from this Court's financial interest consideration, as must all of the losses incurred by Wyoming, which sold all of its Corinthian common stock before the August 3 disclosure.

When losses are properly calculated, Arkansas Teachers' and Northamptonshire's loss of approximately $2.8 million is 34% greater than Stichting's recoverable loss of approximately $2.1 million.[13]   Accordingly, Arkansas Teachers and Northamptonshire are entitled to the strong presumption that they are "the most adequate plaintiff" because Arkansas Teachers and Northamptonshire have, by far, suffered the largest recoverable loss.[14]

## B.   Arkansas Teachers and Northamptonshire Are an Appropriate Lead Plaintiff Group

Arkansas Teachers and Northamptonshire are an appropriate Lead Plaintiff group because they are a small, cohesive group of institutional investors with the capacity to reach consensus decisions and effectively monitor and oversee counsel as well as the litigation.  *See In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, C 01-1559 SI, C 01-1703 SI, C 01-1786 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) (citation omitted).  The appointment of a group of class members as the Lead Plaintiff is expressly permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and courts in

---

[13]   Wyoming and Stichting incorrectly contend that Arkansas Teachers and Northamptonshire supplemented their loss figures after the sixty-day PSLRA motion deadline expired.  *See* Wyoming and PMT's Reply, ECF. No. 40, at pp. 5-6.  Not so.  Arkansas Teachers and Northamptonshire merely, and permissibly, clarified the amount of recoverable losses they suffered under *Dura* based on the same trading records submitted with their original motion and have not supplemented their trading data.

[14]   One movant, Jimmy Elias Karam, agrees that Arkansas Teachers and Northamptonshire are the presumptive Lead Plaintiff with the largest financial interest because Wyoming has no recoverable losses under *Dura*.  *See* Memorandum of Points and Authorities, ECF No. 34, at pp. 3-5; Reply Memorandum of Points and Authorities, ECF No. 38, at pp. 1-2.

- 15 -

1   this District and others have recognized the propriety of appointing small groups with
2   the ability to engage in coordinated decision making. *See, e.g., Yanek v. Staar*
3   *Surgical Co.*, Nos. CV 04-8007 SJO (CWx), CV 04-8263 SJO (CWx), CV 04-8613
4   SJO (CWx), 2004 WL 5574358, at *4 (C.D. Cal. Dec. 15, 2004); *see also Ferrari v.*
5   *Gisch*, 225 F.R.D. 599, 608-09 (C.D. Cal. 2004); *Versata,* 2001 WL 34012374, at *6
6   (appointing unrelated investors as lead plaintiff and allowing for "small groups,
7   whether or not they have any pre-litigation relationship" to aggregate financial losses).
8   Indeed, a lead plaintiff group comprised of sophisticated institutions need not
9   document its propriety unless its members are too numerous to allow it to effectively
10  oversee the litigation. *See In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558, 2010
11  U.S. Dist. LEXIS 120061, at *12-*14 (D. Nev. Oct. 25, 2010) (citing *City of Ann*
12  *Arbor Emps. Ret. Sys. v. Accuray Inc.*, No. C 09-03362, 2009 U.S. Dist. LEXIS
13  105466, at *8 (N.D. Cal. Oct. 26, 2009).

14          Nevertheless, Arkansas Teachers and Northamptonshire submitted extensive
15  evidence of their cohesiveness and ability to actively represent the Class as detailed in
16  their Certifications and Joint Declaration, rebutting any suggestion that these
17  sophisticated institutions were somehow brought together and manipulated by
18  counsel.[15]   *See* Joint Declaration ¶¶4, 8-11.   Here, Arkansas Teachers and
19  Northamptonshire each determined independently to seek appointment as Lead
20  Plaintiff to provide the Class with strong and diverse leadership. *See id.* As the Joint
21  Declaration makes clear, Arkansas Teachers and Northamptonshire, under their own
22  direction and initiative, authorized counsel to seek joint appointment as Lead Plaintiff
23  to further their shared goals and desire to work with another sophisticated institutional

24  _____

25  [15]    *See* Certification of Northamptonshire, attached as Exhibit B to the Stickney
26  Decl. (ECF No. 24-2); Updated Certification of Arkansas Teachers, attached as
    Exhibit B to the Stickney Reply Decl. (ECF No. 44); *see also* Joint Declaration of
27  Arkansas Teachers and Northamptonshire ("the Joint Declaration"), attached as
    Exhibit A to the Stickney Reply Decl. (ECF No. 44).

28

593355_1

1  investor.  *See id.* at ¶¶4-6.  Further, if appointed, these two institutional investors

2  understand their obligations to efficiently and effectively manage the litigation and

3  their counsel by conducting regular conference calls to monitor the litigation,

4  requiring counsel to maintain time records for examination, and by utilizing several

5  other oversight and supervisory measures.  *See id.* at ¶¶8-11.  Because Arkansas

6  Teachers and Northamptonshire are a small, cohesive group of sophisticated

7  institutions with the ability to reach consensus decisions, and effectively monitor and

8  oversee counsel as well as the litigation, their financial interests are properly

9  aggregated for purposes of this litigation.

10        **C.**    **Arkansas Teachers and Northamptonshire Otherwise**
               **Satisfy the Requirements of Rule 23**

11       There are no legitimate grounds to challenge Arkansas Teachers' and

12  Northamptonshire's typicality or adequacy, let alone the kind of "proof" required to

13  rebut the presumption entitling them to appointment as Lead Plaintiff.  *See*

14  *Cavanaugh*, 306 F.3d at 729 n. 2 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  At this

15  stage of the litigation, Arkansas Teachers and Northamptonshire need only make a

16  preliminary showing that they satisfied the typicality and adequacy requirements of

17  Rule 23.  *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005); *Takeda*,

18  67 F. Supp. 2d at 1136.

19       Arkansas Teachers and Northamptonshire satisfy Rule 23's adequacy

20  requirement because they assert a greater financial interest, have demonstrated their

21  willingness to vigorously prosecute the claims against Corinthian, and are committed

22  to diligently and faithfully performing their duties as Lead Plaintiff in the best

23  interests of the Class, as detailed in their Certifications and Joint Declaration.  *See*

24  *Gisch*, 225 F.R.D. at 607 (explaining that movant with the largest financial interest is

25  incentivized to vigorously prosecute the action).  Similarly, Arkansas Teachers and

26  Northamptonshire satisfy Rule 23's typicality requirement because like all other class

27  members they (1) purchased Corinthian common stock during the Class Period; (2) at

28

prices artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *See Autobytel*, 226 F.R.D. at 667; *see also Yanek*, 2004 WL 5574358, at *6.

Any challenge to Arkansas Teachers' and Northamptonshire's adequacy to serve as Lead Plaintiff should be rejected. Arkansas Teachers and Northamptonshire are an identical group of sophisticated institutional investors – one domestic and one foreign pension fund—when compared to Wyoming and Stichting. While Wyoming and Stichting incorrectly suggest that Arkansas Teachers' and Northamptonshire's Joint Declaration was untimely submitted, *see* Wyoming and PMT's Reply, ECF No. 40, at pp. 12-14, the PSLRA does not require movants to submit a joint declaration with the initial lead plaintiff motion. Further, Arkansas Teachers and Northamptonshire properly submitted their Joint Declaration to resolve any doubt about their commitment to vigorously prosecute and oversee the action for the benefit of the Class, in response to unfounded speculation raised by Wyoming and Stichting. *See* Joint Declaration at ¶¶8-11.

Moreover, Arkansas Teachers' and Northamptonshire's adequacy to represent the Class is not affected by Arkansas Teachers' submission of an updated certification.[16] Inadvertent mistakes in a movant's original certification "do not serve as a basis for disqualif[ication]." *Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410-11 (D. Minn. 1998); *City of Marysville General Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. CV-09-659-EJL-CWD, 2010 WL 2000040, at *6 (D. Idaho May 19, 2010). Accordingly, Arkansas

---

[16] Arkansas Teachers' updated certification added the November 1, 2010 appointment of Arkansas Teachers as Lead Plaintiff in *Rochester Laborers Pension Fund v. Monsanto Co.*, No. 10-cv-1380 (E.D. Mo.) and Arkansas Teachers' filing of a motion seeking Lead Plaintiff appointment in *City of Southfield Fire and Police Retirement System v. Beckman Coulter, Inc.*, No. 10-cv-1327 (C.D. Cal.) on November 2, 2010. *See* Updated Certification of Arkansas Teachers, attached as Exhibit B to the Stickney Reply Decl. (ECF No. 44).

Teachers and Northamptonshire satisfy the preliminary inquiry into Rule 23's adequacy and typicality requirements and no proof exists to rebut the strong presumption entitling them to appointment as Lead Plaintiff.

Arkansas Teachers and Northamptonshire have further demonstrated their adequacy through their selection of Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") to represent the Class. Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent and the Court should not disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Court for Northern Dist. of California*, 586 F.3d 703, 712 (N.D. Cal. 2009). Further, this Court in past cases has approved co-lead counsel structures as consistent with the PSLRA. *See Igor Cherednichenko v. Quarterdeck Corp.*, No. 2:97-cv-04320-CM-CW (C.D. Cal. Sept. 5, 1997) (King, J.) (approving lead plaintiff's selection of co-lead counsel); *Brodsky v. Nat'l Golf Prop.*, No. 2:02-cv-01383-GHK-RZ (C.D. Cal. May 14, 2002) (King, J.) (same). Indeed, approval of co-lead counsel structures is often beneficial to the Class. *See In re Bank of America Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009).

Arkansas Teachers and Northamptonshire selected Bernstein Litowitz and Grant & Eisenhofer to serve as Co-Lead counsel because the firms are among the preeminent securities class action law firms in the country.[17] *See* Joint Declaration at ¶9. Specifically, Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.), in which settlements totaling in excess of $6

---

[17]    *See e.g.*, Bernstein Litowitz's Firm Biography attached as Exhibit D to the Stickney Decl. (ECF No. 24-4); Grant & Eisenhofer's Firm Biography attached as Exhibit E to the Stickney Decl. (ECF No. 24-5).

1   billion – one of the largest recoveries in securities class action history – were obtained

2   for the class.  Bernstein Litowitz also served as co-lead counsel in *In re McKesson*

3   *HBOC, Inc. Securities Litigation* (N.D. Cal.), in which it helped obtain a $960 million

4   settlement – the single largest settlement of any securities class action within the

5   courts of the Ninth Circuit.  Currently, Bernstein Litowitz is serving as lead counsel in

6   the *Toyota* and *New Century* securities class actions in this District.

7          Similarly, Grant & Eisenhofer has been lead counsel in several of the largest

8   securities class actions in history, including *In re Tyco International Limited*

9   *Securities Litigation* (D.N.H.), in which a $2.975 billion settlement was achieved on

10   behalf of the class, and most recently, Grant & Eisenhofer resolved securities

11   litigation pending against Marsh & McLennan for $400 million.

12          Moreover, Bernstein Litowitz and Grant & Eisenhofer have significant

13   experience working together as Co-Lead Counsel.  *See In re Refco, Inc. Sec. Litig.*,

14   No. 05-cv-8626 (S.D.N.Y.) ($400 million total recovery); *In re Satyam Computer*

15   *Servs. Ltd. Sec. Litig.*, No. 09-MD-2027(BSJ) (S.D.N.Y.); *In re Genzyme Corp. Sec.*

16   *Litig.*, No-09-cv-11267(GAO) (D. Mass.).

17          As explained above, Arkansas Teachers and Northamptonshire are the "most

18   adequate plaintiff[s]" under the PSLRA.  Arkansas Teachers and Northamptonshire

19   have the largest financial interest arising out of the purchase of Corinthian common

20   stock and satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil

21   Procedure.  Accordingly, Arkansas Teachers and Northamptonshire respectfully

22   request that the Court: (1) appoint Arkansas Teachers and Northamptonshire as Lead

23   Plaintiff; (2) and approve their selection of Bernstein Litowitz and Grant & Eisenhofer

24   as Co-Lead Counsel for the Class.

25

26

27

28

DATED: January 13, 2011

Respectfully Submitted,

BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP
DAVID R. STICKNEY
(davids@blbglaw.com)


_____s/DAVID R. STICKNEY_____
DAVID R. STICKNEY

12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 858/793-0070
858/793-0323 [fax]

- and -

GERALD H. SILK
(jerry@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: 212/554-1400
212/554-1444 [fax]

GRANT & EISENHOFER P.A.
JAY W. EISENHOFER
(jeisenhofer@gelaw.com)
485 Lexington Ave 29th Floor
New York, New York 10017
Telephone: 646/722-8500
646/722-8501 [fax]

GEOFFREY C. JARVIS
(gjarvis@gelaw.com)
485 Lexington Ave 29th Floor
New York, New York 10017
Telephone: 646/722-8500
646/722-8501 [fax]

- 21 -

593355_1

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on January 13, 2011, I authorized the electronic filing of

3    the foregoing with the Clerk of the Court using the CM/ECF system which will send

4    notification of such filing to the e-mail addresses denoted on the attached Electronic

5    Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6    document or paper via the United States Postal Service to the non-CM/ECF

7    participants indicated on the attached Manual Notice List.

8        I certify under penalty of perjury under the laws of the United States of America

9    that the foregoing is true and correct.  Executed on January 13, 2011.

10

                        <u>s/ DANIELLE S. MYERS</u>

11
                        DANIELLE S. MYERS

12
                        ROBBINS GELLER RUDMAN

13
                                & DOWD LLP
                        655 West Broadway, Suite 1900

14
                        San Diego, CA  92101-3301
                        Telephone:  619/231-1058

15
                        619/231-7423 (fax)

16
                        E-mail:      dmyers@rgrdlaw.com

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 2:10-cv-06523-GHK -RC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ian D Berg**
  iberg@aftlaw.com

- **Jonathan Andrews Boynton**
  jboynton@knlh.com,vperez@knlh.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Robert L Dell Angelo**
  robert.dellangelo@mto.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Michael Marc Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,asohrn@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com,lglancy@glancylaw.com

- **Marc I Gross**
  migross@pomlaw.com

- **Mark I Labaton**
  mlabaton@motleyrice.com,kmontenegro@motleyrice.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com

- **Blair A Nicholas**
  blairn@blbglaw.com,kayem@blbglaw.com,jonw@blbglaw.com,timothyd@blbglaw.com

- **Lynn H Scaduto**
  lynn.scaduto@mto.com,vickie.leyson@mto.com

- **Andy Sohrn**
  asohrn@glancylaw.com

- **John W Spiegel**
  john.spiegel@mto.com

- **David R Stickney**
  davids@blbglaw.com,virginiag@blbglaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`